FRENCH AND ANOTHER *v.* KIRKLAND AND OTHERS.

Under the act of the 12th of April, 1816, for draining the great marsh or swamp on the Canasaraga Creek, in the towns of Sullivan and Lenox, in the county of Madison, the proprietors of the lands overflowed by that creek have a right to drain the marsh according to the provisions of the act, although in so doing they would divert the water from the mill of the complainants, which is situated on the Chitteningo Creek; inasmuch as at the time the act was passed they could have drained the marsh in the manner contemplated by that act, without injuring the mill of the complainants on the stream below; since which time, the greater portion of the waters of the Chitteningo Creek have been diverted by the state to supply the Erie canal. By the 5th section of the act, the complainants have a complete remedy against the proprietors of the land to be benefited, for all damages they may sustain in consequence of the draining of the marsh Whether they would have such remedy against the state? *Quære.*

June 19th.    BY the act of the 12th of April, 1816, entitled " An Act for draining the great marsh or swamp on the Canasaraga Creek, in the towns of Sullivan and Lenox, in the county of Madison, and for other purpose," the proprietors of the lands overflowed by the waters of the Canasaraga Creek, or otherwise called the Great Marsh, are authorized to drain the same by one or more canals or ditches to be cut and opened from the sand marsh or creek by the most direct and *convenient route or course into the Oneida Lake; and also, if necessary, by lateral canals and ditches from the marsh to the main canal or ditch. Commissioners are to be appointed to assess and impose upon the lands of the proprietors rendered more valuable, or in any wise benefited by reason of the cutting of the said canals, such sums of money as they may think reasonable and just, not ex-

ceeding $2 per acre, towards defraying the expenses of the operations and the subsequent repairs. And the lands may be sold for the payment of such assessments, if the proprietors shall neglect to pay the same. By the 5th section of the act, it is provided, that in case any person shall be injured, or suffer damage by occasion of the canal and draining of the land, the commissioners shall estimate and determine the amount of such damage, and shall thereupon assess the same upon the proprietors; and cause the same to be collected in like manner as the assessment for the expenses of draining off the lands, and paid over to the persons entitled to such damages.

The waters of the Canasaraga and Cowasalone creeks unite in the southerly part of the marsh. After their junction, the united stream is called the Black Creek; the most northerly bend of which is within the marsh, near the north edge thereof, about three-fourths of a mile from the Oneida Lake. It is at this point the agents of the proprietors are cutting a canal or drain from the Black Creek to the lake. The complainants are the owners of a mill on the Chitteningo Creek, some distance below its junction with the Black Creek. They allege that the cutting the canal into Oneida Lake will divert the water from their mill, and render it useless; and they pray an injunction to restrain them from continuing their operations.

*N. P. Randall*, for the complainants.

*Jonas Platt*, for the defendants.

THE CHANCELLOR:—It is contended on the part of the complainants, that the act of 1816, being for the benefit of the individual proprietors of the lands in the marsh, must be *construed strictly; and that in so construing it, the defendants have no right to interfere with the waters of Black Creek. On looking at the localities of the marsh and creeks, on the map which has been considered by both

1828.

French
v.
Kirkland.

[*119]

1828.

*French*
*v.*
*Kirkland.*

parties on the argument as correct, I am satisfied the defendants are proceeding to drain the marsh in the manner contemplated by the act of 1816, and are not exceeding the powers granted by that act. At the time the act was passed, they could have drained the marsh in the manner they are now endeavoring to do, without injuring the property of the complainants or other owners of mill privileges on the stream below. Since that time, however, the greater portion of the waters of the Chitteningo Creek have been diverted by the commissioners of the state for the purpose of supplying the canal. The owners of the marsh having a vested right to drain their lands in this manner, previous to the passing of the canal law, it may well be doubted whether the complainant's remedy for any damage they may now sustain in consequence of the exercise of this right, is not against the state instead of the owners of the lands drained. But, if otherwise, the act of 1816 has given them a full and perfect remedy. In giving a construction to that act, it may be necessary to refer to the previous law which existed in relation to the Great Marsh.

On the 4th of April, 1806, an act was passed, authorizing the draining of this marsh, the first section of which act was substantially the same as that of 1816. The second section made it the duty of the surveyor-general to ascertain the practicability of draining, and to direct the manner of doing it. The third section provided for the appointment of commissioners of assessment, to apportion the expenses of the draining among the proprietors in proportion to the benefit by them respectively received; and any real or personal estate belonging to each proprietor was made liable to be sold for the payment of his share of the expense. The fourth section provided for the assessment of damages to other persons, and gave a similar remedy for the collection of the amount from the proprietors. The act of 1816 changed the mode of payment, both as to the damages and the expenses.

[*120]

Instead *of the individual and personal responsibility of the

proprietors, their lands alone are made liable for the pay- ment. In the case of expenses, however, the restriction has gone still further; and the amount chargeable upon the land of each proprietor can in no instance exceed two dollars per acre. But in relation to the damages, no such limitation is provided. The fifth section of the act of 1816 is copied from the act of 1806; and the principle of assessment there intended, means the principle of apportioning the amount of damages among the proprietors in reference to the benefit received by each. The legislature never could have intended to limit the damages to be paid to third persons in consequence of the acts of the proprietors, to two dollars per acre.

It was reasonable, as the proprietors acted by a majority, that the rights of the few should be protected against the acts of the many, by a proper limitation. But such limitation would be unreasonable in relation to the damages done to third persons, for the joint benefit of the proprietors. If any doubt exists as to the intention of the legislature, it is the duty of the court, in construing their acts, to presume they did not intend to take away individual or private property without just compensation to the owners. The complainants have, therefore, a legal and adequate tribunal to ascertain, collect and pay any damages they may sustain by reason of the draining of the marsh; and the motion for an injunction is refused with costs.